310-0199 Consolidated with 310-220 People of the State of Illinois Appellant to Tom Serrato v. Jacqueline Farris and believe I might have a say on this Mr. Serrato, you may proceed Thank you, Your Honor May it please the Court? Good morning, Your Honors Counsel This Court, we filed a brief in this Court with three issues The first having to do with the prosecution, the second having to do with the statutory summary suspension As I mentioned in my motion for oral argument, I'd like to focus on the first issue regarding the prosecution of the defendant Related specifically to whether a defendant has the right to physically resist a forced blood draw when the amount of force used is reasonable Obviously, our starting point is People v. Jones In that case, the Illinois Supreme Court said that a defendant does not have the right to refuse consent to a blood draw requested by law enforcement officers during an arrest for DUI when there's reasonable suspicion or probable cause to believe that they have, directly under the influence, committed a DUI The language, of course, that the Courts below relied upon, both in the statutory summary suspension and the motions to suppress, was language that said For purposes of clarification, our holding in this case does not give law enforcement officers unbridled authority to order and conduct chemical tests Go on to say we do not suggest that DUI arrestees lack of right to refuse chemical testing, permits law enforcement officers to use physical force in obtaining blood, urine, and breath samples The other quote already eliminates any advantage a DUI arrestee might hope to gain from refusing chemical testing and notes that refusal can be given to the introducing court Our argument, obviously, is that this is dicta How can that be dicta? Because those were not the facts that were before it It was not a physical resistance In Jones, the defendant said, I refuse, but did not resist when the attempted to draw the blood Since those were not the facts before it, it is giving an advisory opinion about what would happen under those circumstances Which, of course, is not allowed Justice Kilbride also pointed out some inconsistencies with that approach He points out, the majority is inconsistent when it asserts that language Essentially, the majority concludes that a suspected impaired driver does not have the right to refuse chemical testing Yet law enforcement officers do not have the right to compel non-consensual testing If law enforcement officers may not employ compulsion, how does the majority suggest law enforcement officers obtain the samples? Obviously, that's dissent And this court is, of course, bound by the majority But, as I say, those were not the facts before it And this is perhaps a prime example of why cases should be limited to that Because the court is a discussion of, well, these are the options If they refuse, you can introduce that refusal in court Well, looking at the statutes, you will note that under the 625-511-501-D2 There are increases in penalties available if, after the third offense, someone has a blood alcohol of over .16 They have a minimum 90-day sentence and a $2,500 fine Now, the only way you're going to know that they're over .16 is to have a blood draw or some other method, some other test To determine what the blood alcohol level is But similarly, a person that would refuse three times, there is an increased amount of time that they would be suspended There's an increased penalty for refusal, isn't there? Yes, there is for suspension We're talking about minimum for criminal penalties for the 90-day sentence They have to spend 90 days minimum in jail for that So you're saying for the DUI criminal prosecution, without that evidence, you can't affect that penalty Exactly And they're giving the defendant the key to the right to limit what his penalty is going to be by refusing I don't think the Supreme Court took that into consideration when they were... Well, they didn't because those weren't the facts before Those weren't the facts before So it didn't have the benefit of those arguments and didn't have the benefit of considering those things But those aren't the facts before us here either We're not talking about a third blood draw of this defendant, are we? Well, we don't actually know at this point We know that she's not a first-time offender We know that because the Secretary of State came back with its notice saying, is this a first-time offender? No So there's not facts in the record that indicate how many times she's had DUI If this is her third DUI, then clearly that blood draw would be significant But again, that was a motion to suppress and now we have to go back Well, you know, even if one conceded its dicta, I mean, what is the court trying to say here? Well, the court is trying to say we don't want them to use unbridled force We're not asking for unbridled force, we're asking for reasonable force What will this record show that's reasonable force? Yes, I believe it will Because what we have is the police officer saying, hey, we want you to take the blood to the hospital The hospital people go to her and say, hey, we want to take this blood She's belligerent, refuses It's the hospital personnel that hold her down Three hospital personnel according to the findings of the court  And then one drew the blood I mean, that would be reasonable in the circumstances Now, there's other cases from other jurisdictions It's reasonable to have, what, three people holding them down? Well, yes Is that what you're asking us to find? I'm asking you to find that under the circumstances, what is reasonable under particular circumstances, the totality? Now, when we look at, you know, well, there's a couple of cases that are cited that are from other jurisdictions, particularly Wisconsin And that one is People v. Krause And that one, the defendant was arrested for DUI and being transported to the police station for a breath test When he decided he was being too belligerent And so they decided to transport him to the hospital On the way to the hospital, of course, they hogtie him and put a burlap sack over his head Then when they get to the hospital Are you suggesting we did the same in Illinois? Well, the reason for the burlap sack was because he was spitting at the officers as well as attempting to bite them So that might actually be reasonable in the circumstances So, yes, okay When we get to the hospital, he's still belligerent So there's officers there that are holding him down and they put a pillowcase over his head because he's spitting at them And they draw the blood that way But in fact, he actually gets injured in this case because of the needle Because of his resistance The court finds that that is still reasonable under the circumstances And they have a They set up a factors, which I think that should be adopted In order to look at whether or not it is reasonable under the circumstances Now they look at a few Supreme Court cases, including Well, it's actually the Arizona court But Graham Anyway, you know, US Supreme Court case of Graham Which was a 1983 action In which the court rejected the due process argument And said when officers use force The question of whether force is reasonable or not Is subject to search and seizure provisions under the Fourth Amendment So Krauss set up these four, several factors I have six that I've identified in the case Whether the test was administered by medical personnel in a proper setting according to accepted medical procedures Second, the severity of the crime at issue Third, whether the suspect posed an immediate threat to the safety of the officers or others Fourth, whether the defendant actively resisted Fifth, whether the police refused the defendant's reasonable request for an alternate test And sixth, the degree of the authority's need for the sample Now under those, that test, the Krauss court found that all those factors were met And it was reasonable I believe that similar to here, if this court were to adopt this test It would also be reasonable I mean, the test was administered in a hospital by medical personnel The severity of the crime at issue, both in Krauss and here DUI is considered a serious offense, particularly a repeat offender But that was after the fact Well, now it's whether she's a repeat offender, that is true So that we're dealing with But DUI in and of itself is Yeah, but you said particularly a repeat offender Well After the fact Okay But she did get into an accident She hit another car and that car in turn hit a third vehicle apparently So this is a DUI involving an accident, not necessarily a personal injury But of course, the Jones court cleared up that point Whether the suspect posed an immediate threat to the safety of the officers She was belligerent during the time And when she was struggling, she could have caused injury to others Well, but I mean, I guess by the fact that the police direct the medical personnel to hold her down Can you honestly stand here and say that they can feel threatened when they're the police And they're telling the nurse and the techs to hold her down I mean, I think that's a little far-fetched Well, the Krauss court found the same situation When the defendant was during this course of struggling And during the blood draw, he was causing a threat to others So that We're talking that Okay Threat to the Okay Okay Counsel, you have two minutes Thank you Whether the defendant actively resisted, which she did and everyone admits it Whether the police refused the defendant's recent request for an alternate test Now here, the question was asked, well, did you have any, did you ask for another test? Counsel objected We never got an answer because the objection was sustained So we don't know whether there was an alternate test But in Krauss Well, we said the police said that she voluntarily did this Right I'm sorry Didn't she say she voluntarily, something on that report You wanted to amend it Oh, well, the report initially said that she submitted to the test and it was over .08 The problem with that is that when it comes to statutory summary suspension That's a, her refusal is what kicks in And she, so that's why we were asking for the amendment  That's a separate issue from the prosecution and whether you have the right to ask for a forced blood draw for prosecution purposes Okay, but I mean a statement by the officer was what Well, that she refused to, did not consent to the blood draw And that she actively resisted by flopping around on the The degree of the authority's need for the sample, clearly if you're going to prosecute It is more helpful to have the blood alcohol level from the blood draw than it is otherwise I believe I'm about out of time, so first, in summary The Jones language that I cited should be considered dicta There should be consideration of whether reasonable force is used in the drawing of the blood And then we ask that the lower court be reversed I just have one final question Could the officers have gone and obtained a court order like in the old days when somebody was hospitalized in Iraq or something Do you feel that they were precluded from doing that or was that an option available to them? Well, Schmerber tells us that we don't need to because of the effervescent nature of the blood draw Or of alcohol in the blood So going and getting a warrant would have actually been defeating the purpose of allowing the officers to ask for the blood draw right then So I would say it's not practical Now in the Clery case, Arizona law allows for telephonic warrants apparently But I don't believe Illinois will allow for that I guess what I'm asking you is I understand what you said The delay may lessen the degree to which you can rely on the blood draw But what I'm asking you is were they precluded from doing that? Are they allowed to do that under the law? Well, you're always allowed to go and seek a search warrant The problem is that even enforcement of the warrant though, if she's refusing to cooperate What are you going to do? Haul in front of court for contempt? I mean that is different from prosecution for a DUI There's a little more limited penalties that can be imposed So I think again from a practical point of view, it's not something that even though you can do it It would defeat the purpose of the legislation and defeat what the courts have said in Schmerber about the ethnicity and nature of the blood and all that I don't believe there are further questions Thank you Mr. Arado Thank you Mr. Sachs, you may respond Morning Morning I want to just answer your first or second question that you asked Concerning what the record would show about the force involved here I think that was the question Yes On page 36 and 37 of the transcript The girl or woman is described as being 5 feet 1 inch tall and 125 pounds I was at the hearing, I conducted the hearing and when I tell you she's a peanut, she's a peanut And what happened was the policeman, when she first refused to give consent Called his boss at the police station And the words that were used according to the policeman was, well, force the test Force her to do it And that's exactly what happened So then the medical personnel asked her, would you cooperate? And she said, I'm not giving any blood, I'm not going to do anything And so they had three people holding her down and somebody took the blood And it wasn't just the instant that they took the blood I think someone described the whole procedure as taking a number of minutes, 10 or 15 minutes I can't remember the number of minutes that were used But in reality, this case, in my humble opinion Was she also hooked up to an EKG at that time? No, she had a cut lip And that was her sole injury And she said she didn't want any treatment, according to the record I don't think she had any other treatment This case, in my view, humble as that might be sometimes Speaks to what kind of people we are Judge Kilbride, Justice Kilbride, in his dissent Pointed out the following The majority, and this is in the Jones case, which is the only case I cited Because it's the only Illinois case I could find where this subject was addressed The majority concludes The suspected impaired driver does not have the right to refuse chemical testing Which seems to be the law in Illinois under the Jones case That you can't refuse to give a chemical test And that means breath, blood, or urine Yet the law enforcement officers do not have the right to compel non-consensual testing This is Kilbride's statement Then he says, if law enforcement officers may not employ compulsion How does the majority suggest law enforcement officers to obtain a sample? My suggestion in my brief was that Well, if it's a urine test they want, they could catheterize the person If that's what we want to become here in Illinois Well, urine can be produced without resorting to a catheter I don't know, I'm not It just requires patience Pardon me? It just requires patience Well, I don't know, I'm not a medical person But that was a thought I had And then I thought, well, maybe they could do a Heimlich maneuver on the person  The whole notion of that is ridiculous in my opinion But again, I'm just a humble lawyer Doing these sorts of things to protect my clients And that's what this was all about So anyway, when I say it's ridiculous The Supreme Court said The unbridled use of force is out We don't do that I don't understand what the state doesn't understand About that very plain and clear language And so they go through these gymnastics And their argument about Well, in California they do it this way And in Arizona they do it this way But in New Jersey they can't do it that way But Wisconsin, which is now the leader in the Midwest apparently You know, you can put a sack over a person's head And take blood that way if you want to do that That's such nonsense in America There's a penalty for refusing And you lose your license For in this case, I think it's three years I frankly don't remember what the length of it was But you get suspended for three years And this isn't the only instance in the criminal law Where people keep their own penalty down You know, we have the Fifth Amendment Where folks don't have to get up and talk about things In order to enhance their penalty And say what nasty acts they engage in Which might enhance their penalty Well, certainly there's a difference I'm sorry, Judge, I have a hard hearing problem So does my husband on occasion Well, when he gets to be 70 He's entitled to do that, I suspect Certainly there's a difference between the Fifth Amendment Because blood draws and breath tests are non-testimonial Well, I agree with that But I'm simply giving an example Where the gentleman got up and suggested That while she's trying to keep her penalty down Of course she is, assuming she even knows That that keeps her penalty down Which I frankly doubt So, anyway, I wasn't going to argue anything here I thought my brief said everything that I needed to say And wanted to say If you all have any questions I'll be happy to entertain them And if not, I'll sit down and let him rebut everything I have said Okay I don't believe there are any further questions Thank you, Mr. Sachs Thank you, Judge Mr. Otto, you may reply Briefly, Your Honor May it please the Court Your Honor, I do not believe the size of the individual Should matter whether or not it's reasonable force Certainly it would pay less force to hold her down If she's not terribly strong or not terribly big As far as the length of time On 72 of the record And reported proceedings It took approximately 4 minutes Now, it's not clear whether that was from the time they asked her Whether she'll give it or not But it's certainly not 10 or 15 minutes As suggested As far as other methods The draw of urine by catheterization As you pointed out First, you're not going to You don't need to catheterize that urine Second The argument is reasonable force for a blood draw And Schmerb and the Court pointed out that You're going to have minimal intrusion You know, blood draws happen all the time But in your reasonableness test One of the things that you had said was You know, it was 2, maybe 3 people And then now you've said Well, the size of the person doesn't matter Well, you know, I'm not 5'1'' And I don't weigh 125 pounds And what if it takes 10 people to hold me down? Is that still reasonable? If that's what it takes to To resist the force that is being presented And I guess just to back up I mean, in looking at the statute You know, there was a time when It wasn't allowed to draw blood after an accident Unless you had consent Do you, in your research Do you remember the legislative history? What was behind? Well, only what was mentioned in Jones What the analysis was in Jones At different points in time There was different legislative intent They allowed for the refusal Then they took it away Then they included it Then they took it away Now, the suggestion Certainly by Justice Kilbride Is that the language that is currently in there Allows for refusal But didn't they? It allows for refusal under these facts Because there's not a death Or an injury to another Correct And how did the Supreme Court Find that ambiguous in Jones? They found that the I think really the dissent says That's in effect That's the first step They had to find it ambiguous To get a result-oriented decision Well, because they looked at the history Of the statutes But you don't look at history When you find the language is unambiguous That's a first rule of construction And your argument Is obviously well taken By Justice Kilbride However, we must follow The majority decision of the Supreme Court So, how they found it Is however Justice Garment Played it out in the opinion I guess Former Justice's court said To figure that out You can read the entrails of chickens I have a concern A battery is a contact That occurs without Legal justification And if you've ever held a child down While they get a blood draw You know that it hurts Obviously you say it's not A very painful procedure But it hurts somebody What's the justification For a police officer To go ahead and inflict pain? The justification is It's a balancing test It's always Why isn't it a battery? Why isn't it a battery When they Pull an arm? Because it's without Legal justification What's the legal justification? The balance between The state's interest As the court said in Graham The United States Supreme Court Said in Graham Allegations of excessive force Have to be balanced Under the Fourth Amendment So it's always An objective balancing test Interest of the state Versus the privacy interest The interest of the state In the prosecution Of a DUI defendant Who has For which there's probable cause To believe that they've committed this offense Is greater than their right to Be free from this intrusion And the statute allows for The taking of the blood So the question then becomes How far can you go? We suggest that reasonable force As has been found Under the balancing test At Horton By the United States Supreme Court I'm not sure that I agree Because an officer can take urine Just by being patient This woman was admitted Into the hospital Certainly, but how long Are you going to wait And then It's a matter You can do it Without being intrusive Potentially But whose choice is it? I mean, the officer The statute allows for the officer To ask for the blood to be drawn And under the precedence That are set out In other jurisdictions I mean Okay, then where do you draw the line? If we do agree with you That a small needle can be inserted Are we going to get into the business Of how large The dynamiter of the needle Or are we going to extend it To the insertion of the catheter For somebody who has inferior veins Where the nurses stick Five or six times And can't get blood? Where does it end? It's a reasonableness test Is my suggestion Under the totality Of the circumstances Is it reasonable For the officers Or the medical personnel? Is this a reasonable Medical procedure as well? That is the first factor That's put forth in the cross To help understand Your position. Thank you. Thank you, Your Honor. Thank you, Mr. Arado. Thank you, Mr. Sachs, For your arguments On this matter this morning. The case will be taken Under advisement.